UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
RONALD A. SCHENA and
RACHAEL SCHENA,
　　　Debtors.　　　　　　　　　　　　　　　No. 11-09-13165 SA

**MEMORANDUM OPINION IN SUPPORT OF ORDER SUSTAINING**
**HIGH DESERT STATE BANK'S OBJECTION TO DEBTORS' EXEMPTION**

Before the Court is the objection of High Desert State Bank ("Creditor") (doc 48) to Debtors' claimed exemption of a checking account holding military retirement funds. This is a core proceeding dealing with the exemptions of a debtor. 28 U.S.C. § 157(b)(2)(B). The parties agreed that the Court would decide the issue based upon pleadings and memoranda (doc 85). For the reasons set forth below, the Court sustains the Creditor's objection to the Debtors' claimed exemption.

**BACKGROUND**

On July 21, 2009, Ronald A. Schena and Rachael Schena ("Debtors") filed a Chapter 11 bankruptcy petition (doc 1). On August 5, 2009, Debtors filed Schedules A – J (doc 14). The Debtors elected to use the "federal exemptions" under 11 U.S.C. § 522(b)(2)[1]. In Schedule C the Debtors claimed an exemption under 11 U.S.C. § 522(d)(10)(E), 38 U.S.C. §§ 1970(g)[2] and 5301 et seq.

---

[1] Debtors amended their schedules twice (docs 16 and 91); neither amendments are relevant to this dispute.

[2] Debtors later conceded that 38 U.S.C. § 1970(g) addresses insurance benefits and is not relevant in this case. Doc 89, p. 4.

for the "checking account located at: Charter Bank (Military Retirement)" containing the sum of $10,800 ("Account"). The Account consists solely the proceeds of military retirement checks received pre-petition by Ronald Schena, a retired United States Air Force officer. Creditor objects that the Account may not be exempted under the federal exemptions.

Therefore, there are two issues for the Court. First, whether a debtor is precluded from invoking 38 U.S.C. § 5301, a federal non-bankruptcy exemption, where a debtor has elected the "federal bankruptcy exemptions" under 11 U.S.C. § 522(b)(2). Second, whether uncommingled pension proceeds, deposited in a bank account are exempt under either 11 U.S.C. §522(d)(10)(E) or 38 U.S.C. § 5301(a)(1).

**DISCUSSION**

The filing of a bankruptcy petition creates a bankruptcy estate. The estate includes all "legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); see also Rousey v. Jacoway, 544 U.S. 320, 325 (2005). In an individual's Chapter 11 case, "property of the estate includes earnings performed by the debtor after the commencement of the case, but before the case is closed,

dismissed, or converted to a case under Chapter 7, 12, or 13, whichever occurs first." 11 U.S.C. § 1115(a)(2)[3].

The Supreme Court originally held that despite retirement from active service, members of the armed services were still "in the military service of the government," <u>United States v. Tyler</u>, 105 U.S. 244, 246 (1881). However, the Court has recently modified its position on military retirement pay from "reduced compensation for reduced current services" to "deferred pay for past services". <u>Dorfman v. Moorhous (In re Moorhous)</u>, 180 B.R. 138, 148 (Bankr. E.D. Va. 1995), <u>aff'd</u>, 108 F.3d 51 (4th Cir. 1997)(citing <u>McCarty v. McCarty</u>, 453 U.S. 210, 221-22 (1981) and <u>Barker v. Kansas</u>, 503 U.S. 594, 605 (1992)). Under the former standard, wages would be included in the estate by § 1115(a)(2); under the current standard, a pension is included by § 541(a). Therefore, military retirement pay is included in the estate and must meet criteria under § 522 to be exempt.

---

[3]In Chapter 7 cases, however, military retirement pay received after the filing of the bankruptcy petition is excluded from the debtor's estate under § 541(a)(6). <u>In re Haynes</u>, 679 F.2d 718, 719 (7th Cir.), <u>cert denied</u>, 459 U.S. 970 (1982). In that case, the trustee sought to include the debtor's retirement pay in the estate, claiming the pay was nonexempt property of the estate under §522 and § 541(a). However, the court found that retired service members were still required to report for a physical examination once every four years, were subject to recall to active duty, remained subject to the Uniform Code of Military Justice and could be tried by a military court-martial. <u>Id.</u> Therefore, the obligations imposed upon a military retiree in order to receive retirement pay made the nature of the pay "reduced compensation for reduced current services." <u>Id.</u>

**I.   A Debtor using § 522(d) may not use 38 U.S.C. § 5301.**

Exemptions from the property of the estate are governed in the Bankruptcy Code by § 522.  Under § 522(b)(1) debtors may choose the "federal bankruptcy exemptions" in § 522(b)(2) or where applicable, the "state and federal non-bankruptcy exemptions" in § 522(b)(3)[4].  When a debtor elects the federal bankruptcy exemptions in § 522(b)(2), the debtor applies the exclusive list of exemptions set out in §522(d).  <u>Carpenter v. Ries (In re Carpenter</u>), 408 B.R. 244, 246 (8th Cir. BAP 2009), <u>aff'd</u>, 614 F.3d 930 (8th Cir. 2010). Therefore, the Court must determine whether a debtor is precluded from invoking federal non-bankruptcy exemptions not listed in § 522(d) when they elect to utilize the federal exemption scheme through § 522(b)(2).

---

[4]11 U.S.C. § 522(b)(1) provides:
Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection. In joint cases filed under section 302 of this title and individual cases filed under section 301 or 303 of this title by or against debtors who are husband and wife, and whose estates are ordered to be jointly administered under Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, one debtor may not elect to exempt property listed in paragraph (2) and the other debtor elect to exempt property listed in paragraph (3) of this subsection. If the parties cannot agree on the alternative to be elected, they shall be deemed to elect paragraph (2), where such election is permitted under the law of the jurisdiction where the case is filed.

When a debtor chooses to use § 522(b)(2), he or she is limited to the "exclusive list of federal exemptions outlined in the Bankruptcy Code." In re Kochell, 732 F.2d 564, 566 (7th Cir. 1984). On the other hand, the federal non-bankruptcy exemptions are available only where the debtor has chosen to utilize the state exemption scheme prescribed in § 522(b)(3). Id. The plain language of the statute "that the debtor must choose between the two exemption systems, rather than enjoy the benefits of both, is perfectly clear." Walker v. Treadwell (In re Treadwell), 699 F.2d 1050, 1052 (11th Cir. 1983). Additionally, Congress' intention to limit exemptions is apparent in the House Report, which concisely states: "the debtor may choose the federal exemptions prescribed in subsection (d), or he may choose the exemptions to which he is entitled under other federal law and the law of the State of his domicile." H. Rep. No. 95-595, 95th Cong., 1st Sess., 126 (1977). See also S. Rep. No. 95-989, 95th Cong, 2nd Sess., 73 (1978).

The court in Treadwell considered this issue with respect to social security payments under 42 U.S.C. § 407. Treadwell, 699 F.2d at 1052. In that case, the debtor elected the federal exemptions and also invoked the Social Security Act (42 U.S.C. § 407) in order to exempt these funds as well. Id. at 1050. The court found that when a debtor chooses the federal exemptions he or she forfeits the protection afforded by 42 U.S.C. § 407 with

-5-

respect to the accumulated social security benefits. Id. at 1052. The court stated:

> Thus, the Debtor in this case could have obtained the exemption of section 407, but only by forsaking the exemptions specified in the Bankruptcy Code, 11 U.S.C.A. § 522(d), and electing the state and non-bankruptcy federal exemptions. 11 U.S.C.A. § 522(b). Nothing in the language of section 407 permits a social security recipient to claim all bankruptcy exemptions in addition to the social security exemption.

Id. Since Treadwell, Congress added that "none of the moneys paid or payable or rights existing under this subchapter shall be subject ... to the operation of any bankruptcy or insolvency law" to 42 U.S.C. § 407, which specifically excludes social security proceeds in the bankruptcy context. Carpenter 408 B.R. at 248. Nevertheless, Treadwell still stands for the proposition that debtors are not allowed to invoke non-Title 11 exemptions where they have elected to use § 522(d) exemptions.

After the amendment to the Social Security Act, the Carpenter court found that a debtor could invoke 48 U.S.C. § 407 even where he or she chose the federal exemption scheme under § 522(b)(2). Carpenter, 408 B.R. at 249. However, the court's limited holding resulted from the added language in the Social Security Act. Id. at 248. As such, the Carpenter holding is that where federal non-bankruptcy law specifically provides a protection in bankruptcy, such provision governs unless some provision of the code explicitly provides otherwise. Id. Later courts have applied Carpenter in its limited context; that is,

-6-

where the federal non-bankruptcy provisions specifically protects property in bankruptcy. In re Anderson, 410 B.R. 289, 294 (Bankr. W.D. Mo. 2009). The court in Anderson found that because the Civil Service Retirement Act (5 U.S.C. § 8346(a)) did not contain the "limiting language" as in 48 U.S.C. § 407, the "exemption would apply only to those debtors who choose, or are required to claim ... exemptions under state law and federal law other than § 522(d). Id.

Therefore, this Court finds that where debtors have elected to use the exemptions specified in § 522(d) they are precluded from invoking federal non-bankruptcy exemptions, except where non-Title 11 law explicitly provides for protection of debtors in bankruptcy.

Here, the Creditor has met its burden of proof that the exemptions were not properly claimed. Fed. R. Bankr. P. 4003(c). Therefore, the Debtors, having elected the federal exemptions, may not claim exemptions for the Charter Bank military retirement account under § 522(d)(10)(E) and 38 U.S.C. § 5301.

## II. Uncommingled pension proceeds are not exempt under either § 522(d)(10)(E) or 38 U.S.C. § 5301(a)(1).

Where a debtor has chosen (or been forced to claim) federal exemptions, § 522(d)(10)(E) provides that the debtor may exempt the following property:

(10) The debtor's right to receive—

-7-

> (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

11 U.S.C. § 522(d)(10)(E)(emphasis added).

When interpreting a federal statute, courts first examine the plain language of the statute. Consumer Product Safety Commission v. GTE Sylvania, 447 U.S. 102, 108 (1980). See also Dalton v. Internal Revenue Service, 77 F.3d 1297, 1299 (10th Cir. 1996). The plain meaning of the legislation will be dispositive except where it is contrary to the clear intention of the drafters. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989).

Exemption legislation should be construed liberally in order to give effect to the purpose of Congress, that is, to protect funds for the maintenance and support of beneficiaries. Porter v. Aetna Casualty & Sur. Co., 370 U.S. 159, 162 (1962)[5]. The language of section 522(d)(10)(E) is plain and leaves little

---

[5] In Porter, the issue before the Court was whether the exemption continues under 38 U.S.C. § 3101(a) for benefits paid by the United States Veterans' Administration after being deposited into a deposit account. The Supreme Court protected veterans' retirement, finding: "The Congress, we believe, intended that veterans in the safekeeping of their benefits should be able to utilize those normal modes adopted by the community for that purpose—provided the benefit funds, regardless of the technicalities of title and other formalities, are readily available as needed for support and maintenance, actually retain the qualities of moneys, and have not been converted into permanent investments." Id. at 162. (Decided under former law.)

-8-

or no room for a liberal construction. Section 522(d)(10) specifically exempts a debtor's right to receive a payment under a particular plan.

Interpreting the statute with respect to its plain language, those funds due to a debtor under § 522(d)(10)(E) plans lose their exempt character once the debtor receives payment. <u>In re Cesare</u>, 170 B.R. 37, 39 (Bankr. D. Conn. 1994) (citing 2 Norton Bankruptcy Law and Practice 2d § 46:17, at 46-36 (William L. Norton ed., 1994)("[Section] 522(d)(10) exempt[s] '[t]he debtor's right to receive' the benefits and not benefits that have already been paid over to the debtor.")). Therefore, given the plain meaning, courts have found that the general rule[6] is that "once money from an exempt fund is paid out and placed in a bank account, such money typically loses its exempt status." <u>Anderson</u>, 410 B.R. at 291. Nevertheless, such money retains its exempt status where Congress enacts an explicit statute, such as 42 U.S.C. § 407, to protect certain types of funds even where payment was made pre-petition. <u>Id.</u> Moreover, this plain language interpretation is consistent with construing exemption statutes liberally because it allows debtors to retain the exempt

---

[6]The Court in <u>In re Panza</u>, 219 B.R. 95 (Bankr. W.D. Pa. 1998) did not find the general rule argument persuasive. The Court emphasized that the "so-called 'general rule' is not universally embraced." <u>Id.</u> at 97 n. 1. Nonetheless, the court held that a debtor may not utilize § 522(d)(10) to exempt traceable funds in a savings account from disability benefits. <u>Id.</u> at 99.

-9-

character of exempt property where Congress has provided for such protection in legislation through either federal bankruptcy or non-bankruptcy law. The majority of courts have followed this plain language interpretation of the general rule with respect to "right to receive". In re McCollum, 287 B.R. 750, 753 (Bankr. E.D. Mo. 2002)("The 'right to receive' a benefit has been deemed to have been extinguished when payments or benefits have already been received by a debtor before the bankruptcy case was commenced."); In re Michael, 262 B.R. 296, 298 (Bankr. M.D. Pa. 2001)("All five subsections of § 522(d)(10) exempt '[t]he debtor's right to receive' the benefits and not the benefits that have already been paid over to the debtor.")(Citation omitted.); In re Panza, 219 B.R. at 97 (Same.); In re Moore, 214 B.R. 628, 631 Bankr. D. Kan. 1997)(The "language suggests that the exemption only applies to the right to receive future payments."); In re Williams, 181 B.R. 298, 301 (Bankr. W.D. Mich. 1995)(Section 522(d)(10) does not contemplate exemption of traceable assets.); In re Cesare 170 B.R. at 39 ("Under the plain language of [section 522(d)(10)], then, any funds due a debtor under such a plan or contract lose their exempt character once the debtor receives the funds."); but see In re Caslavka, 179 B.R. 141, 147 (Bankr. N.D. Iowa 1995)(interpreting the "right to receive" in a state statute as applying to lump sum payment from a profit sharing plan after rollover into annuities).

-10-

Limiting § 522(d)(10) exemptions to only payments due is supported by comparing § 522(d)(10) with the later added § 522(d)(11)[providing an exemption for the right to receive and traceable proceeds of particular property][7]. The language of § 522(d)(11) plainly exempts both the debtor's right to receive payment as well as "property that is traceable to" such property. Additionally, Congress provided specific language in non-bankruptcy statutes exempting certain government benefits, such as crime victim's reparations and qualified retirement funds. The language regarding these exemptions is substantially different than the language of § 522(d)(10).  Cesare, 170 B.R. at

---

[7] 11 U.S.C. § 522(d)(11) exempts:
The debtor's right to receive, or property that is traceable to--
    (A) an award under a crime victim's reparation law;
    (B) a payment on account of the wrongful death of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;
    (C) a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of such individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;
    (D) a payment, not to exceed $ 21,625, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; or
    (E) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

-11-

39 n.1. These examples show that Congress knows the difference and how to write statutes to reflect that different treatment. As such, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)(Citations omitted.). Congress therefore did not intend to allow debtors an exemption under § 522(d)(10) for pre-petition proceeds received from a qualified retirement fund. In re McCollum, 287 B.R. at 753-54; In re Michael, 262 B.R. at 298-99; In re Panza, 219 B.R. at 97; In re Moore, 214 B.R. at 631; In re Cesare, 170 B.R. at 39.

The right to receive with respect to § 522(d)(10)(E) was considered at length in Cesare by the Bankruptcy Court for the District of Connecticut. Cesare, 170 B.R. at 39. In that case, the Chapter 7 debtors attempted to exempt their individual retirement account[8], which was funded solely by lump-sum proceeds of an exempt employee benefit plan. Id. at 38. The debtors supported their argument with In re Woods, 59 B.R. 221, 225 (Bankr. W.D. Wis. 1986)(finding lump-sum proceeds in a retirement plan were exempt was consistent with liberal construction purpose

---

[8]Debtors did not claim the IRA as independently exempt under the § 522(d)(10)(E). In re Cesare, 170 B.R. at 38. However, a retirement account or an ERISA-qualified pension plan may be excluded from the property of the bankruptcy estate under § 541 regardless of the debtor's election of the state or Federal exemption scheme. Patterson v. Shumate, 504 U.S. 753, 760 (1992).

-12-

of the state exemption statute); however, the Cesare court distinguished Woods because it was based on a state exemption statute which was significantly broader than § 522(d)(10). Cesare, 170 B.R. at 40. In addition, the court emphasized the plain language and ability of Congress to use specific language in concluding that once retirement funds are received pre-petition, the right to receive is extinguished. Id.

There is authority to the contrary. In re Donaghy, 11 B.R. 677, 680 (Bankr. S.D. N.Y. 1981) and In re Johnson, 36 B.R. 54, 56 (Bankr. D. N.M. 1984). The Donaghy court used equitable considerations to allow a debtor to exempt proceeds of a retirement plan under special circumstances. Donaghy, 11 B.R. at 680. The debtors invoked § 522(d)(10)(E) to exempt pension benefits received pre-petition. Id. As this express exemption was a "new feature" of the 1978 Bankruptcy Code, the court looked to the underlying rationale of the law. Id. at 679. The court found pension benefits were a "tangible reflection of" wages, emphasizing the need for the funds in providing for a "fresh start". Id. The court also construed the "reasonably necessary" language of § 522(d)(10) as applying to proceeds because of the debtors' apparent need. Id. In particular, the proceeds were necessary because the debtors were aging, no longer able to work, and suffering from mounting medical problems. Id.

-13-

Following the Donaghy court's use of equity, the Johnson court adopted the special circumstances analysis in finding a stock plan exempt. Johnson, 36 B.R. at 56. The court found that a 47 year old debtor who was unemployed in a field where finding local reemployment would be difficult was entitled to exempt a pre-petition lump-sum pension payment. Id. Also, despite the debtor living rent-free, his alimony obligations coupled with basic expenses for living and searching for employment allowed the court to find the value of the stock plan "reasonably necessary." Id.

Nevertheless, cases which allowed proceeds of a retirement plan as a substitute for wages where "reasonably necessary" have been severely limited and have generally been subsequently treated as anomalies. McCollum, 287 B.R. at 754. In particular, the Supreme Court ruled in Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 207 (1988) that § 105 could not be used to override a specific Code provision. "Whatever equitable powers remain in the Bankruptcy Courts must and can only be exercised within the confines of the Bankruptcy Code." Ahlers, 485 U.S. at 207. Thus, the McCollum court, relying on Ahlers, found that the plain language of § 522(d)(10) "precludes the [c]ourt from using its equitable powers to construe the phrase ["right to receive"] to encompass funds already received pre-petition." McCollum, 287 B.R. at 755.

-14-

Panza also addressed the limits of the court's equitable power with respect to § 522(d)(10)(E). Panza, 219 B.R. at 97. The debtors in Panza filed a Chapter 7 petition and sought to exempt traceable federal employee disability payments received pre-petition deposited in a savings account. Id. at 95. Despite the disability payments being the sole source of income for the debtor, the court found that the funds were not exempt. Id. at 98-99. The court distinguished In re Frazier, 116 B.R. 675 (Bankr. N.D. Wis. 1990), which held disability benefit proceeds were exempt. The Frazier court ruled that 42 U.S.C. § 407 (the Social Security Act) provided explicit reference to bankruptcy and therefore the court found it must "harmonize" the intention of Congress with the Bankruptcy Code. Panza, 219 B.R. at 98. The statute at issue in Panza did not contain such language[9] and therefore the court could not permit an exclusion or exemption of traceable pre-petition federal employee disability payments. Id.

Finally, the Bankruptcy Court for the District of Kansas reached a similar conclusion in finding an exemption for social security proceeds, but not for retirement plan proceeds.[10] In re

---

[9]The court also found that should Congress amend a Federal law, § 522(d)(10)(C) in particular, that traceable pre-petition payments may be exempt. In re Panza, 219 B.R. at 98-99.

[10]Although Kansas has opted out of the Federal exemptions under § 522(b)(3), the state law still allows debtors to claim exemptions under § 522(d)(10). In re Moore, 214 B.R. at 629.

-15-

Moore, 214 B.R. at 628. The court held that the statutory language of the Social Security Act was explicit in providing an exemption for commingled pre-petition social security payments, in contrast to the language of § 522(d)(10)(E) which did not provide similar language for retirement plans the "funds which were already paid out." Id. at 631.

The Debtors cite a multitude of cases which provide that proceeds of veteran's benefits[11] and workmen's compensation settlements[12] continue to retain their exempt character (doc 89). These cases are not applicable to the Debtors here because they reference statutes outside the scope of § 522(d). The Debtors also emphasize that the uncommingled nature of the proceeds renders the deposits exempt; however, the mere fact that the proceeds in the Debtors' account were uncommingled does not render them exempt. In re Carbaugh, 278 B.R. 512, 521 (10th Cir. BAP 2002). Finally, the Debtors' choice of federal exemptions is

---

[11] Porter v. Aetna Cas. & Surety Co., 370 U.S. 159, 162 (finding that benefits paid by the United States Veterans' Administration retain their exempt status under 38 U.S.C. § 3101(a)(1) even when deposited into an account in a federal savings and loan association) and United States v. Griffith, 584 F.3d 1004, 1020-21 (10th Cir. 2009)(holding in a criminal case that exempt Veterans' Administration funds, once deposited into the beneficiary's account and remained readily available, retained their identity as "public money" under 38 U.S.C. § 641 until converted into permanent investments or property).

[12] Waldman v. Nolen (In re Nolen), 65 B.R. 1014, 1018 (Bankr. D. N.M. 1986) (holding that uncommingled proceeds of a workmen's compensation settlement is exempt from claims of creditors under N.M. Stat. Ann. § 52-1-52 (1978)).

-16-

dispositive because Congress has not explicitly provided a bankruptcy exemption for military retirement pay in 38 U.S.C. § 5301. Therefore the Debtors cannot exempt traceable pre-petition military retirement pay under § 522(d)(10)(E).

Even if this Court did conclude its equitable powers sufficient enough to overcome the <u>Norwest</u> limitation and find that a debtor could exempt traceable pre-petition military retirement pay, the debtor must have a reasonable need for the funds. The leading case for a "reasonably necessary" analysis is <u>In re Taff</u>, 10 B.R. 101 (Bankr. D. Conn. 1981). The court held that the reasonably necessary analysis is as follows:

> [T]he reasonably necessary standard requires that the court take into account other income and exempt property of the debtor, present and anticipated ... and ... the appropriate amount to be set aside for the debtor ought to be sufficient to sustain basic needs, not related to his former status in society or the lifestyle to which he is accustomed but taking into account the special needs that a retired elderly debtor may claim.

<u>Id.</u> at 107. The <u>Taff</u> analysis as applied in New Mexico is a high standard, examining whether the debtor presently has or will likely have basic funds on which to sustain his or herself. <u>In re Johnson</u>, 36 B.R. at 56.

Although neither party has provided evidence regarding whether the funds are reasonably necessary, such conclusion is apparent from the Debtors' filings. The Debtors in this case have necessary funds available both currently and in the future to

-17-

support their basic needs. Debtors list current monthly income as $8,671.63[13] on Schedule I and do not expect any change in income for the following year (ending August 5, 2010)(doc 14). The Debtors list current expenses on Schedule J at $13,399.74; leaving net income of negative $4,728.11. However, in available monthly operating reports from July 21, 2009 until June 30, 2010[14], the Debtors report a total gain of $166.67.[15] The Debtors therefore have sufficient income currently to provide for their basic needs.

In the future, a significant portion of the Debtors' expenses are for $4,000 in "legal, accounting, and litigation,"

---

[13] Monthly gross wages for Mr. Schena is in the amount of $9,821.07, but deduction for payroll taxes and Social Security of $1,973.27, Simple IRA $1,098.50 and deductions from military retirement for $1,724.67 leave net monthly take home pay of $5,024.63. Also, Mr. Schena receives $3,647.00 for military retirement pay. (docs 14 and 25).

[14] Debtors did not file "Page 2" of their monthly operating report for October 2009, leaving the Court without evidence of the Debtors' cash status for the month. However, assuming no other income besides those provided in the Wells Fargo and Compass Bank accounts, the Debtors would have experienced a net gain of $940.92 based on the beginning and ending balances of the two accounts. With the October 2009 estimate based on account balances, the Debtors would have gained $1107.59 from July 21, 2009 until June 30, 2010.

[15] Debtors monthly net gains and losses are as follows: July 21-30, 2009 ($115.03), August 2009 (-$655.34), September 2009 ($1669.56) [this number was also not provided, but is based on given income and expenses], October 2009 (omitted), November 2009 ($380.27), December (-$1,236.91), January 2010 ($2783.30), February 2010 (-$2009.82), March 2010 (-$2015.47), April 2010 ($1505.48), May 2010 ($243.45), and June 2010 (-$613.38).

-18-

Case 09-13165-s11    Doc 151    Filed 10/14/10    Entered 10/14/10 11:55:12 Page 18 of 20

which will not likely continue once the current bankruptcy and state court issues are resolved.  The Debtors also list medical expenses of $2,165.20; however, those expenses include $2,000 for medically-necessary dentistry work which is spread out over a two year period and will not continue after that time.  Without these two noteworthy expenses, the Debtors will see a significant monthly surplus in the future.

Finally, the Debtors situation here is distinguishable from those in <u>Johnson</u> because the Debtors will likely continue to have significant stable income from Mr. Schena's current salary and military retirement as well as from numerous other retirement plans listed in Schedule C.  Accordingly, the $10,800 military retirement proceeds are not reasonably necessary to meet the basic needs of the Debtors and should not be allowed as an exemption under § 522(d)(10)(E).

## CONCLUSION

For the reasons set forth above, the Creditor's Objection to the Debtors' Exemption is **SUSTAINED**.  The Court will enter a separate Order denying the exemption in the account.

*[signature]*

Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket:  October 14, 2010

Copies to:

Louis Puccini, Jr
Puccini Law, P.A.
PO Box 50700
Albuquerque, NM 87181-0700

Christopher M Gatton
Law Office of George Dave Giddens, PC
10400 Academy Rd., #350
Albuquerque, NM 87111